UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| AM BROADBAND, LLC | : | |
|     Plaintiff | : | |
|  | : | |
| v. | : | 3:08-cv-378 (CFD) |
|  | : | |
| FIRST FINANCIAL INSURANCE COMPANY, | : | |
| COMMERCE & INDUSTRY INSURANCE | : | |
| COMPANY | : | |
|     Defendants | : | |

**RULING ON MOTIONS TO DISMISS**

Plaintiff AM Broadband, LLC ("AM Broadband") sued First Financial Insurance Company ("First Financial") and Commerce & Industry Insurance Company ("Commerce") in the Connecticut Superior Court on a five count complaint, alleging various claims arising out of disputed insurance contracts. Commerce removed the case to this Court based on diversity of citizenship, which the parties do not contest.[1] Commerce and First Financial now move to dismiss the action based on the prior pending action doctrine or the Colorado River abstention doctrine.

**I.   Background**

This lawsuit concerns disputes as to the defendants' responsibilities under separate

---

[1] Plaintiff-AM Broadband, LLC represents that it is a citizen of Connecticut. Defendant-First Financial is an Illinois corporation with its principal place of business in North Carolina, and defendant-Commerce is a New York corporation with its principal place of business in New York.

insurance policies AM Broadband purchased from First Financial and Commerce.[2]  On December 22, 2003, AM Broadband, which has its offices in Canterbury, Connecticut, used a Connecticut agent to procure a workers' compensation insurance policy and a general liability insurance policy from First Financial and Commerce.  AM Broadband has asserted, and the defendants have not contested, that the insurance contracts were issued and had operative effect in Connecticut, and were required to be approved by the Connecticut Insurance Department.

On November 5, 2004, an AM Broadband employee claimed that he was injured on the job.[3]  The underlying facts are the following: AM Broadband contracted with Cablevision Systems Corporation ("Cablevision") to provide cable television (and related product) installation and repair to Cablevision customers.  Alexander Cohen, an employee of AM Broadband, was injured while he was working on a ladder at the home of a Cablevision customer in New York.  Cohen filed a lawsuit in New York for his injuries against Cablevision, which then made an indemnification claim against AM Broadband.  AM Broadband contends that it timely notified Commerce and First Financial of the claims that resulted from the injury, and requested, based on the respective insurance contracts, that Commerce and First Financial provide AM Broadband with a defense and indemnification.  Both defendants refused, and a default judgment entered against AM Broadband in New York on July 12, 2006.

Before AM Broadband brought the Connecticut Superior Court action that was removed to this Court, it sent a letter on December 19, 2007 to First Financial.  The letter was written

---

[2]First Financial and Commerce are both authorized to conduct business in Connecticut.

[3]AM Broadband's liability for this injury was established through a separate indemnification agreement between AM Broadband and Cablevision Systems Corporation.  That agreement and AM Broadband's liability to Cablevision are not at issue in this case.

> to provide notification that at this time [AM Broadband] is preparing a declaratory judgment action to be commenced against First Financial Insurance Company arising out of its failure to provide a defense and indemnification to its insured.  Prior to the commencement of said action, I wanted to provide notification to you of this office's intention to commence said action and provide you with an opportunity to review your file and reconsider your position relative to this matter. . . . In the event I do not hear from you by December 28, 2007 or in the event your position remains unchanged, please be advised that an action will be commenced thereafter which will seek not only declaratory relief but also damages for extra contractual claims.

The letter specifically referenced Connecticut law.  On December 28, 2007, First Financial sent an e-mail response to AM Broadband, as follows: "First Financial Insurance Company acknowledges receipt of your letter dated 12/19/07.  We are currently reviewing the company's position, and will respond formally in the near future."

On January 25, 2008, First Financial filed a declaratory judgment action in New York state court ("New York action").  AM Broadband alleges bad faith in First Financial's "race to the courthouse" in New York.  In its answer in the New York action, AM Broadband asserted five counterclaims.  Although Commerce was not originally a party to the New York action brought by First Financial, it has since intervened.[4]

On February 11, 2008, AM Broadband brought a five count complaint in the Connecticut Superior Court against First Financial and Commerce.  Commerce removed the action to this Court on March 13, 2008.  AM Broadband's five claims in this action are the same as those brought as counterclaims in the New York action, with one exception.  In the fifth counterclaim in the New York action AM Broadband simply asserted that "First Financial is prohibited from engaging in unfair or deceptive acts or practices," while in its fifth count in this action AM

---

[4] The New York action is currently stayed pending this Court's ruling on the instant motion to dismiss.

Broadband asserted unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA"). Commerce and First Financial have moved to dismiss this action and wish to proceed on the earlier filed New York declaratory judgment action.

**II.     Discussion**

    **A.     Prior Pending Action Doctrine**

First Financial argues that because it brought the New York action before AM Broadband filed the Connecticut action that was removed to federal court, this Court should dismiss or stay the federal court action in favor of the first-filed New York action. The prior pending action doctrine provides that "[w]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second." Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir. 1986) (internal quotation marks omitted). The prior pending action doctrine, however, does not apply when the prior pending action is a state court action. Cupe v. Lantz, 470 F. Supp. 2d 128, 132 (D. Conn 2007). "Generally as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). The Supreme Court has explained that "[t]his difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id.

See also Ziemba v. Clark, 167 Fed. Appx. 831 (2d Cir. 2006) (recognizing the prior pending action doctrine applies when there are duplicative federal suits). Because the prior pending action in this case is a New York state court action, the prior pending action doctrine is inapplicable. Where, as here, the prior pending action is a state court action, "the more appropriate analysis is one of abstention, pursuant to Colorado River." Cupe, 470 F. Supp. 2d at 132.

### B. *Colorado River* Abstention

In Colorado River and subsequent cases, the Supreme Court laid out a number of factors federal courts should consider to determine whether to abstain from hearing an action when a similar action is pending in state court. "To determine whether abstention under Colorado River is appropriate, a district court is required to weigh six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." Village of Westfield v. Welch's, 170 F.3d 116, 121 (2d Cir. 1999) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). The factors are as follows:

> (1) the assumption of jurisdiction by either court over any res or property;
> (2) the inconvenience of the federal forum;
> (3) the avoidance of piecemeal litigation;
> (4) the order in which jurisdiction was obtained;
> (5) whether state or federal law supplies the rule of decision; and
> (6) whether the state court proceeding will adequately protect the rights of the
> party seeking to invoke federal jurisdiction.

Id. "No single factor is necessarily decisive, . . . and the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." Id. Further, a federal court's "task under Colorado River is not to determine whether there is some substantial reason for the exercise of federal jurisdiction; rather, we must ascertain whether there

exist exceptional circumstances that justify the surrender of federal court jurisdiction." Village of Westfield, 170 F.3d at 124.  The fact that this Court has jurisdiction by way of diversity of citizenship does not change the analysis.  See Law Enforcement Ins. Co., Ltd. v. Corcoran, 807 F.2d 38. 41 (2d Cir. 1986) (in the context of applying the Colorado River analysis, stating, "[S]o long as Congress chooses to have us exercise diversity jurisdiction, we must do so unflaggingly.").

A "necessary prerequisite to abstention under Colorado River" is "a finding that the concurrent proceedings are 'parallel.'"  Dittmer v. County of Suffolk, 146 F.3d 113, 117-18 (2d Cir. 1998).  "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Id. (internal quotations and citations omitted).  Here, the parties are the same in the state and federal suits.  The claims that AM Broadband brought in the instant suit and the counterclaims it asserted in the New York action are identical, except that the unfair trade and insurance practices claims in this action were brought specifically under CUTPA and CUIPA.  The factual and legal issues AM Broadband has raised in the two actions are substantially the same and sufficiently parallel to proceed to the Colorado River abstention factors.

The first factor is the assumption of jurisdiction by either court over any res or property.  As there is no property at issue, this factor is neutral, and neutrality favors this Court's retention of the case.  See Village of Westfield, 170 F.3d at 122 ("We have held that the absence of a res 'points toward exercise of federal jurisdiction.'") (citations omitted).

The second factor is the inconvenience of the federal forum.  Neither party alleges that the federal forum is inconvenient, and AM Broadband argues Connecticut is more convenient in

that most witnesses live in the state.[5]  Again, the neutrality of this factor favors retention.  See id. ("We have held that where the federal court is 'just as convenient' as the state court, the factor favors retention of the case in federal court.") (citations omitted).

The third factor is the avoidance of piecemeal litigation.  The New York action is currently stayed pending the outcome of the motion to dismiss in this Court, though it is unclear how the New York court will proceed going forward.  This factor favors dismissal because of the possibility of piecemeal litigation should the actions proceed in both courts.

The fourth factor is the order in which jurisdiction was obtained.  "This factor does not turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" Id. at 122 (citations omitted).  First Financial did file the New York action before AM Broadband filed its action in the Connecticut Superior Court, and before this Court attained jurisdiction by way of Commerce's removal.  As to the more important issue of how much progress has been made in the two actions, it appears, if anything, that discovery has proceeded only slightly farther in the federal suit than in the New York action.

The fifth factor is whether state or federal law supplies the rule of decision.  "We have stated that '[w]hen the applicable substantive law is federal, abstention is disfavored.'  . . . We also note that . . . the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." Id. at 124.  Both this Court sitting in diversity and

---

[5] Although the incident involving Cohen occurred in New York, most of the evidence concerning coverage under the two policies would not be so tied to that forum.

the New York court would apply state law, and it is likely that law will be Connecticut law.[6] Additionally, the state law issues are not novel or complex; rather, they appear to be relatively standard breach of contract, negligence, and unfair trade practices claims. Because neither this Court nor the New York court has a strong interest in adjudicating relatively simple issues of Connecticut law, this factor is also neutral, and therefore weighs in favor of retention.

The final factor is whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. Here, "federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" Id. (citations omitted). This factor is aimed at determining whether the state court will sufficiently protect any federal rights that may be at issue. See Woodford v. Cmty. Action Agency of Greene County, 239 F.3d 517, 523 (2d Cir. 2001) ("If there is any substantial doubt as to whether complete and prompt protection of federal rights is available in the state proceeding, dismissal would be a serious abuse of discretion."). As there are no federal rights at issue here, this factor is also neutral.

The Colorado River abstention analysis dictates that the Court should retain jurisdiction.

---

[6]"In diversity cases, federal courts look to the laws of the forum state in deciding issues regarding conflicts of law." Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941)). As this case was removed to the District of Connecticut based on diversity jurisdiction, Connecticut law will apply for purposes of determining which state's substantive law should govern the dispute. Id. Because "Connecticut traditionally has followed a vested rights approach in determining the appropriate choice of law[,] . . . the validity and construction of a contract generally are determined by the law of the state of execution or by the law of the state in which the contract is to be performed." Brandewiede v. Emery Worldwide, 815 F.Supp. 60, 63 (D. Conn. 1992). Although the choice of law issue has not yet been briefed in this case, it appears that the insurance contracts at issue were executed in Connecticut, and it is therefore likely that Connecticut law will apply.

All but the third factor, avoidance of piecemeal litigation, are neutral. The Supreme Court, however, has "held that 'mere potential for conflict in the results of adjudications,' does not, without more, warrant staying exercise of federal jurisdiction." Village of Westfield, 170 F.3d at 123 (quoting Colorado River, 424 U.S. at 816). Because "the balance [is] heavily weighted in favor of the exercise of [federal] jurisdiction,'" id. at 121 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 16), the strong presumption of retaining jurisdiction has not been overcome.[7]

### III. Conclusion

Accordingly, the defendants' motions to dismiss [docket # 8 & 14] are denied. Additionally, the defendants' motions to stay discovery pending ruling on this the motion to dismiss [docket # 29 & 31] are denied as moot.

SO ORDERED this   10th   day of February 2009, at Hartford, Connecticut.

                      /s/ Christopher F. Droney
                      **CHRISTOPHER F. DRONEY**
                      **UNITED STATES DISTRICT JUDGE**

---

[7] The defendants also argue that the Court should decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act. AM Broadband's claims, however, were not brought pursuant to the Declaratory Judgment Act, and several of its claims are for damages.